UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAGDALENA SZCZERBACKI,<br>    Plaintiff, | : <br> : <br> : | <br> No. 3:23-CV-00228-(VLB) |
| v. | : <br> : | |
| TRINITY HEALTH OF NEW<br>ENGLAND CORPORATION, INC.,<br>TRINITY HEALTH CORPORATION,<br>AND DR. REGINALD J. EADIE,<br>M.D.,<br>    Defendants. | : <br> : <br> : <br> : <br> : <br> : | December 14, 2023 |

### MEMORANDUM OF DECISION GRANTING
### PARTIAL MOTION TO DISMISS [DKT. 23]

When Plaintiff Magdalena Szczerbacki was diagnosed with multiple sclerosis in 2013, she notified her employers, Defendants Trinity Health Corporation and Trinity Health of New England Corporation, Inc. (collectively, "Trinity Defendants"), for whom she had been working as a registered nurse since 2007.  She thereafter requested and received exemptions to the mandatory influenza vaccine as a reasonable accommodation, due to adverse MS-related health effects from previous vaccinations.  The COVID-19 pandemic led to the development of COVID-19 vaccines, which the Trinity Defendants required their employees to get unless they qualified for an exemption.  Ms. Szczerbacki applied for an exemption for the same reasons she sought and obtained a reasonable accommodation for the flu vaccine.  This time, she was denied.  When she sought an exemption for religious reasons, she again was denied.  Ultimately, the Trinity Defendants terminated her on October 29, 2021, for failure to obtain the COVID-19 vaccine.

Ms. Szczerbacki now brings this employment action against the Trinity Defendants and Dr. Reginald J. Eadie, the President and Chief Executive Officer of Trinity Health of New England.  Counts One through Four concern violations of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq* ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"), and Counts Five through Eight concern various common law torts.  Defendant moves to dismiss all common law tort claims.  Plaintiff agrees to dismissing all torts except the intentional infliction of emotional distress claim (Count Eight).  For the following reasons, Count Eight is DISMISSED.

I.   Facts

In 2007, Ms. Szczerbacki began working for Defendants at St. Francis Hospital as a registered nurse.  (Dkt. 22 (Second Am. Compl.) ¶ 20.)  She was diagnosed with MS in 2013 and informed her employers.  (*Id.* ¶¶ 21–22.)  In 2013, she requested exemption from the flu vaccine mandate as a reasonable accommodation, and she submitted a doctor's note and request form indicating she had adverse MS-related health effects to the vaccination.  (*Id.* ¶¶ 23–24.)  Defendants granted this reasonable accommodation and continued to grant this accommodation thereafter.  (*Id.* ¶ 25.)

In 2021, Defendants mandated the COVID-19 vaccine but permitted employees to seek a medical exemption or religious accommodation by August 20, 2021.  (*Id.* ¶ 30.)  Defendant Trinity Health processed the exemption requests from St. Francis Hospital employees.  (*Id.* ¶ 31.)  On July 17, 2021, Ms. Szczerbacki applied for a medical exemption and included her physician's "contraindication

certification," explaining as with prior reasonable accommodation requests that a vaccination would exacerbate her MS symptoms.  (*Id.* ¶¶ 33–35.)  Although employees had been informed they would receive a response within three weeks, she did not receive a response until September 14, 2021: the exemption request was denied and her request was elevated to "secondary national review."  (*See id.* ¶¶ 37, 39.)  That same day, Ms. Szczerbacki e-mailed a complaint to HR and her superior about the failure to accommodate.  (*Id.* ¶ 40.)  The following week, Ms. Szczerbacki requested reconsideration of the denial.  (*Id.* ¶ 43.)  She added more medical information about her past negative vaccine-related side effects to her portal.  (*Id.* ¶ 44.)

Ms. Szczerbacki personally engaged with three individuals who she alleges caused her emotional distress.  First, on October 5, 2021, Ms. Szczerbacki e-mailed Trinity Health of New England's Chief Nursing Officer, Vernette Townsend, and explained why she needed an exemption from the vaccine.  (*Id.* ¶ 45.)  Ms. Townsend responded, "I will try and help however the final decision rests with our System Office."  (*Id.* ¶ 48.)  Although Ms. Townsend promised to circle back, she never did.  (*Id.* ¶ 49.)  Second, on an unspecified date, Ms. Szczerbacki spoke with Tashi Mattis, Nursing Leader / Director of Behavioral Health, who, according to the complaint, "threaten[ed]" Ms. Szczerbacki that she "would not be eligible for unemployment due to her 'non-compliance' with Defendants' policy."  (*Id.* ¶¶ 59, 60.)  Third, on October 20, Ms. Szczerbacki complained to Defendant Eadie about her need for a medical exemption and fear of losing her job.  (*Id.* ¶ 61.)  Defendant Eadie responded in an e-mail that Defendant Trinity Health New England does not

permit leadership to be involved with the exemption approval process, adding: "[T]he process blinds the colleague so that biases are not injected into the decision making. Magdalena, those details if correct, are the extent in which I am informed and involved. Meanwhile, I will see if I can learn more about a scientific reason around why MS wouldn't qualify for a COVID medical exemption." (*Id.* ¶ 64.) He never followed up.

Ms. Szczerbacki was terminated on October 29, 2021. (*Id.* ¶ 70.) After her termination, she received a Certificate of Achievement in the "T.O.P. Tiers of Professionalism" signed by Ms. Townsend. (*Id.* ¶ 71.) She satisfied all bonus requirements but never received a bonus, nor was she paid her accrued paid time off. (*Id.* ¶¶ 72–73.) In both February 2022 and January 2023, Ms. Szczerbacki received a solicitation for employment with Defendant Trinity Health of New England that included a signing bonus. (*Id.* ¶¶ 79–85.) These solicitations caused her emotional distress. (*Id.*) After her termination, Ms. Szczerbacki received medical exemptions—based on identical medical exemption requests as submitted to Defendants—from Western Connecticut State University, Hartford Healthcare, and the United States Veterans Administration. (*Id.* ¶ 88.)

## II. Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).   "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

III.   Analysis

Defendants move to dismiss all common law tort claims, Counts Five through Eight.  As previously mentioned, Ms. Szczerbacki expressly stated that she "<u>does not</u> oppose the motion to dismiss" concerning all counts except Count Eight, the intentional infliction of emotional distress claim.  (Dkt. 27 (Opp'n) at 1 (emphasis in original).)  The Court therefore deems Counts Five, Six and Seven abandoned and they are DISMISSED.  *See Cesare v. PACT MSO, LLC*, No. 3:23-cv-253 (SVN), 2023 WL 583429, at *4 (D. Conn. Sept. 11, 2023).

The Court now addresses the merits of Plaintiff's intentional infliction of emotional distress claim.  "To prevail on an intentional infliction of emotional distress claim in Connecticut, a plaintiff must establish four elements: '(1) that the actor intended to inflict emotional distress or that he knew or should have known

5

that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'" *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 591 (D. Conn. 2023) (quoting *Watts v. Chittenden*, 301 Conn. 575, 586 (2011)). Defendants argue that Plaintiff's IIED claim should be dismissed because she cannot establish the second element.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000); *see also Pottie v. Atl. Packaging Grp., LLC*, No. 3:12cv773 (WIG), 2012 WL 6087282, at *2 (D. Conn. Dec. 6, 2012) (quoting *Cassotto v. Aeschliman*, 130 Conn. App. 230, 235 (2011)) (stating it is the court's role to perform a "gatekeeping function" and evaluate whether the pleadings "set forth behaviors that a reasonable fact finder could find to be extreme and outrageous"). Allegations only satisfy the second element when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 211. A plaintiff fails to satisfy the second element when the alleged conduct "is merely insulting or displays bad manners or results in hurt feelings…." *Id.* This is especially true for workplace-related conduct, as "some level of emotional distress, even significant emotional distress" is reasonably expected at one's place of employment. *Apatow*, 651 F. Supp. 3d at 591; *Larsen v. Berlin Bd. of Educ.*, 588 F.

Supp. 3d 247, 263 (D. Conn. 2022) ("An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner.") (quoting *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000)).

Here, Ms. Szczerbacki fails to establish "extreme and outrageous" conduct. As an initial matter, Ms. Szczerbacki concedes that the named Defendants are not vicariously liable for the actions of its employees, including Townsend and Mattis, who she alleges caused her emotional distress. (*See* Dkt. 27 at 1.) Regardless, the allegations in the complaint fail to establish that the conduct of Townsend, Mattis or Defendant Eadie rise to the level of "extreme and outrageous." For example, both Chief Nursing Officer Townsend and Chief Executive Officer Defendant Eadie informed her they did not have control over the decision-making process but offered to help and/or learn more about why her MS diagnosis might qualify her for an exemption. (*See* Dkt. 22 ¶¶ 48–49, 61–64.) She alleges they never followed through. (*Id.*) At best, this conduct is insulting and disrespectful; it is not conduct that goes beyond standards of human decency, particularly because she knew at the onset that, had they followed through, their efforts could not alter the outcome. *See Appleton*, 254 Conn. at 211. Even Mattis' "threat"—that Ms. Szczerbacki would be ineligible for unemployment benefits if she does not get a vaccination (*see id.* ¶ 59–60)—fails to satisfy the standard. "[I]nsults, verbal taunts, threats, indignities, annoyances, petty oppressions of conduct that displays bad manners or results in hurt feelings, even if unlawful, are usually not deemed extreme and outrageous

conduct." *Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 10 (D. Conn. 2011). Accordingly, these allegations fail to satisfy the second element.

Ms. Szczerbacki also argues several corporate actions constitute "extreme and outrageous" conduct, but these too fall short. For example, both Defendants' decision to terminate her despite having received vaccination exemptions in the past and the fact that she was exempted by subsequent employers suggest only that her prior employer made a different, arguably poor, policy decision with respect to its COVID-19 mandate exemption process. (*See* Dkt. 58 at 10.) As another example, the fact Defendants sent solicitations to Ms. Szczerbacki encouraging her to apply to a position even though they terminated her, (*see* Dkt. 22 ¶¶ 79–85), reflects overly inclusive marketing strategies but do not go "beyond all possible bounds of decency … [so as] to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 211. Therefore, these corporate allegations also fail to satisfy the second element of her IIED claim.

## IV.  Conclusion

For the above reasons, Counts Five, Six, Seven and Eight are DISMISSED. This Court's current Scheduling Order deadlines remain in effect with respect to the remaining Counts One, Two, Three, and Four.

                        IT IS SO ORDERED

                        _____

                        Hon. Vanessa L. Bryant
                        United States District Judge

**Dated at Hartford, Connecticut: December 14, 2023**